Good morning, your honor. Mark Langley and Steve Taylor on behalf of Vulture Tech. District Court committed two critical errors in this case. First, it improperly reversed the jury's finding of enablement because it assumed, without analysis, that the preamble was limited. Second, the court improperly delegated claim construction issues to the jury by permitting ASML to submit to the jury dictionaries and testimony about the meaning of claim terms. As a result, the jury got the claim construction completely wrong. Once the claims are properly construed by the court, not the jury, it's clear that the microscan II cannot render the patent anticipated and that the erroneous claim construction taints the obviousness of the case. But Mr. Langley, this isn't a case where a district court judge makes up his or her own claim construction, not accepting one of the parties. And then might run into trouble because he's not familiar enough with the infringing device or whatever. This is a case where the parties stipulate the claim construction. And even somewhere down the road, the other side says, let's have some clarification on claim construction. And your side says, no, no, no, no, no, we don't need it. So it seems to me we're kind of boxing them in. I mean, if the jury had done anything other than go for your side, you're up here saying problem with claim construction. Well, that's correct, Your Honor, because we believe under the claim construction as a matter of law, the microscan II cannot infringe. What happened in this case was the parties agreed several years ago on a claim construction. And the other side, ASML, decided or found or chose to bring at the last minute the microscan II videotaped in, realized that they had a problem with the claim construction they'd agreed to, and decided they wanted to try to get a new claim construction, one that undid the effect of the previous one. So yes, it's right to say that we argued below the court didn't need to do more claim construction. But that wasn't because it wasn't a claim construction question. It's because we think the claim construction the parties had agreed to is perfectly clear, and that the microscan II can't anticipate under that claim construction. But to be perfectly clear, you not only need to convince us that you've got a single access rather than multiple access, but you've also got to bring in the non-folded aspect of it, too, right? It's not just single versus more than one. It's folded versus unfolded. Well, Your Honor, we think they are the same thing. But yes, it's correct to say that the claim means there must be one optical access, and an optical access is a straight line. That something that moves perpendicularly or in different directions is not an access. We think that there's abundant evidence to support that. Yeah, but some evidence not. No, that's clear. There's plenty of substantial evidence here to support the verdict. And there is the testimony from Dr. Smith that says they're one and the same. Your Honor, I believe it's incorrect that we're looking at substantial evidence to support the verdict because I believe this is fundamentally a question of claim construction. There's no dispute as to how the microscan II operates. So the factual questions that the jury might have decided, there aren't any. Everybody agrees how it operates. It's a catadioptric folded lens system. The disagreement is over whether such a catadioptric folded lens system is axially centered within the meaning of the claims. We submit that's a question of claim construction. So just as in MOBA versus diamond automation, where the court faced a similar issue, the judge had construed the claims, but then let the jury decide a question of whether there had to be a particular relationship between construed claim terms. The apathy there argued substantial evidence review governs. This was a jury determination. This court said no. That's a question of claim construction. And it's reviewed de novo. But in MOBA, this case is a little different than MOBA, right? Because there they were trying to add sequential steps. The jury clearly added a limitation. And the judge agreed with that. Here, it didn't quite work out that way. That's right. It's not precisely factually on point. But the essential point, I think, is the same for the question of the standard of review, which is, is this a question of claim construction and therefore subject to de novo review, or is it a question of evidence submitted to the jury? We suggest that it's got to be a question of claim construction where the only fight the parties are having is definitional, where it's over the meaning of axially centered. And the fact that the evidence the jury was considering was non-contemporaneous dictionary definitions and expert testimony about the meaning of claims suggests, I think, both that this is claim construction and that it's not the sort of thing we want to defer to a jury about. So your claim construction is? Our claim construction is the agreed claim construction. It must be centered relative to the optical axis of the lens. That means we think two things. One is that there has to be only one optical axis. That phrase has no meaning if you can have multiple optical axes because you could be centered relative to any number of them. And second, we think it means, yes, that an optical axis is, as contemporaneous dictionaries make clear, rather than the non-contemporaneous ones they offer, in optics, quote, a straight line. And that's Webster's Unabridged 1968. We also think the specification and other contemporaneous extrinsic evidence support this determination. Your Honor, you're saying the district court inferentially, because of the Jamal ruling, adopted a different claim construction. Is that your position? Your Honor, effectively, yes. That the district court allowed argument about claim construction to go to the jury. The jury made a determination of anticipation on the basis of that mistaken claim construction argument. You're not saying the district court should have given a claim construction that clarified the construction that already was given. No, that's correct. We think the construction was clear, and that under that construction, the Microscan II cannot anticipate as a matter of law because it does not have a single optical axis. That requires us to sort of understand what a single optical axis is. But we think the evidence in the specification and the contemporaneous extrinsic evidence all support the idea that it's a straight line. What do you do when you have a situation where a judge construes a claim and he says, and in his or her construction of the claim is the word X. There's then a further question about what the word X means. It's not a claim term, but it's a term used in the construction. How do you address that? I think of this, Your Honor, as meta-construction. What do we do when we have to construe the claim construction? I think it's a very interesting question, but I think the answer has to be that that too is a question of law if what we're talking about is the meaning of claim terms. And if ultimately, if we say claim term means X and X in turn is unclear, the definition of X I think has to be part of the claim construction. Because there's no factual debate that can go to the jury. There's no question that has to be resolved about how the Microscan II works or whatnot. We think the specification makes it quite clear that the invention in this particular case depended on single-axis refractive systems. The specification repeatedly lists... It's actually strange that you agree to a construction that we let it go to the jury and now complain about the jury going over it Supreme Court never said the jury was incompetent to do that kind of claim construction. They just said that a judge is in a better position as a matter of policy in the market case. Your Honor, we're not... Even though they were doing it forever and you agree to do it now, what's the harm? Well, Your Honor, we did not agree to have a jury construe the claims. In fact... They did. You stipulated. We stipulated to do a claim construction, right? Under that claim construction, as a matter of law, we think the Microscan II cannot anticipate. And so it doesn't matter in some sense what the jury decided or didn't decide. We think that the only reason they could have come to the conclusion that the Microscan II anticipated is because they were persuaded by Mr. Chu's claim construction argument before the jury. But if that claim construction were correct, if a bent, folded, multi-axis lens system could have a single optical axis, then ASML should win. But we think it's not correct, and we think the question of whether it's not correct, that meta-construction question, is a question of claim construction, and so it's subject to de novo review. Change on the obviousness issue. Firstly, I just want to ask you, do you think under KSR there's at least a suggestion that motivation is a question of law, rather than a question of fact? Yes, there may be such a suggestion. But moving on, just looking at Microscan in the appendix, particularly at J.A. 3900, it seems that Microscan discloses, there's a diagram there called, whatever, it seems that Microscan discloses the interchangeability of the folded and non-folded lenses. And if I'm right about that, doesn't that show that one of the skills of the art would be able to unfold the folded lens of Jane in combination with this, which gets you to the conclusion of obviousness? Your Honor, we think the answer to that is no. Because I don't think it demonstrates the interchangeability of these two. In fact, quite the opposite. The entire Microscan II project was the construction of an entirely new type of lens system, a catadioptric lens system, that hadn't been built before, at the cost of $40 million, because the designers of Microscan II believed that existing single-axis refractive systems wouldn't work to solve the problem. Did Microscan precede or follow Jane? I don't know the answer to that, Your Honor. Microscan was not actually known in the art. It is prior art for purposes of this appeal. It was not known, certainly, at the time of the Jane reference. For obviousness, I guess I would suggest two things, Your Honor. First is, if we're right about plane construction, if we're right that a single axis is required, the incorrect determination on Microscan II as a matter of law taints the obviousness for it. So, at a minimum, we think we're entitled to a new trial on this issue. The jury said Microscan II anticipates because it wrongly believed that a catadioptric folded system could be the same as a single-axis system. The whole point of the patent and the specification is to say you don't need a catadioptric system. You can use these well-established, reliable single-lens systems. They then made the kind of next step of checking off the box that said it's also obvious in view of Microscan. The most likely reason for that is that they just concluded it was anticipated, and so, of course, it's obvious as well. So, at a minimum, we think that a remand for a new trial on the obviousness issue is appropriate. But we also think there's evidence from which the court could conclude that the invention was not obvious as a matter of law. Microscan II teaches away from the single-lens systems because it teaches that you need a $40 million new catadioptric system to make this work with the step-and-scan system. The Jane reference says nothing whatsoever about step-and-scan. It's an old system that involves overlap. Mr. Chu's argument in the brief that something is beside if it's hanging over the edge is, frankly, nonsense. It's nonsense as a matter of ordinary construction, but it's also... I would be happy to do so. Good morning, Your Honor. I have three pages of materials in the brief that just lays out some material a little more cleanly. Opposing counsel has no objection to these materials. Good morning. Morgan Chu on behalf of ASML. May it please the Court, I would like to address directly counsel's argument this morning and the principal argument in their reply brief. Here's the principal argument. We accept, at least for the purposes of the reply brief in contrast to their opening brief, verbatim the district court's claimed construction below. And then they do a double flip and say, but we have a construction on top of that construction called this morning a metaconstruction. And that metaconstruction then adds significant limitations, particularly the unfolded limitation. It's wrong and it's perverse. Let me explain first why it's wrong on the intrinsic evidence and the evidence before the Court on a big picture basis. And I don't think that this has been addressed well at all in briefs. First, we have to define just a few terms. There are three different kinds of lenses as of the application date for these systems. Refractive, reflective, catadioptric. A refractive lens takes light and focuses it and doesn't reflect it, similar to a lens in an eyeglass. These lenses usually have a series of lens elements and a refractive lens has each of its elements being refractive. A reflective lens has elements that have mirror-like surfaces that bounce or change the direction of the light, but they also focus it. And there may be several reflective lens elements in a reflective lens. Catadioptric is just a combination. It has one or more refractive elements and one or more reflective elements. So the microscan tube has a catadioptric lens. Now here's the big picture. If you look at the claims that are asserted and the other asserted claims, you see no reference, directly or indirectly, to folded, unfolded, refractive, reflective, catadioptric. If you look at the patent as a whole, what is inside the lens is not the subject of the invention. It is a black box. It's represented as a cylinder. In each of the figures where it appears, it's indicated, well, this is the lens, it's number 11, and there's no description of the lens. If you look through the specification of the patent, you do not see the words folded, unfolded, refractive, reflective, catadioptric. The heart of the invention is a scanning system instead of, the patent tells us, the prior art system that took snapshots, flashes. That's how they print it. So they scan and, the patent also says, there was some prior art that scanned to print the images on the semiconductor wafers, but they didn't have actually centered image fields. The image field is the image on the wafer. It's the light coming out of the lens. The details of what's in the lens has zero to do with the patent. So it's wrong for that reason, and it's wrong for another reason. Here's the evidence at trial. The evidence at trial on which we primarily relied was documentary evidence and testimony of witnesses with first-hand knowledge. One of those pieces of evidence was Dr. Smith's testimony about a single access and the unfolded. Yes. So we're assuming, so you rely on the fact that he said even if there's a single access, that could include the folded. Yes, yes. Professor Smith, Bruce Smith, did testify to that, but that isn't the principal basis of the evidence before the jury. He was actually responding to Dr. Fair's argument. Do you think that the jury thought there was a single access required or not? I mean, is that your view? Was there a single access requirement or not? Well, first, my view is a single access was not required. It's not in the court's claim construction. The word the, even if the court's claim construction was a claim term or a claim phrase, the word the in a method claim that says comprising, that's open-ended, the or a would mean one or more under a status precedence of this court. And so first of all, I don't think that single is a part of construction. The word's not there. It's stipulated to construction without it. But even if it was there, there was a single access. And Professor Smith explained in detail why there was a single access. And it wasn't just something he made up. And I'll cite to a couple items. By single access, you mean in micro-scan. Yes. And he screwed micro-scan, just having a single access. That's correct. And so what's troubling me is that at least if you look at the Linn reference, there's something in the Linn reference that says that the catadioptric, which is micro-scan too, right? Yes. The catadioptric system usually requires more than just one optical access. And that's, you know, so you've got the expert testimony, but you've got this written reference that says that. There is one written reference. There's actually another reference that the other slide refers to. And if we looked in every single reference, there would be other devices that might have more than one access. But the actual catadioptric lens in the MS-2 had a single access. And we know that because of Dr. Smith's testimony. We know that because of Dr. Smith's testimony, and he in detail on direct and cross-examination. With each lens element. Now, first of all, it's irrelevant because the word single's not there, but I'll pretend the word is there. Second, the interior of the lens device is not relevant for reasons I have just explained. But he did go to the interior because of the claim construction arguments that their expert, Dr. Fair, was making to the jury. And he went through every one of the lens elements, and he said, this is a refractive element. Where does light pass? It passes directly through the center of that lens. And this next one's a reflective element. Where's the light going there? It's going directly to the center. To the center there. It never departs from the center of the optical axis. Now, what Dr. Fair did, what's perverse about the argument on appeal is the following. Instead of saying, now, let's look at the exhibits that were before the jury, contemporaneous exhibits such as this one. On the left-hand side, we have the court's claim construction. On the right-hand side, we have a document from the microscan to developers. The claim construction uses the word field, center, axis. And it happens those exact same three words. Axis, center, and field are described by the designers. Another contemporaneous document. This was a joint project that included the Silicon Valley group that later merged with ASML and IBM in an organization called Semitech. Here is another document that's produced from the IBM files during the course of the litigation. It is an exhibit, and it's in the briefs as well as in the joint appendix. This is during the meeting, and the image field is drawn. The circle represents the overall area. It happens also to be the shape of the lens itself. The slot, the rectangle, that's the slot field. The X in the middle, it's even labeled contemporaneously as the optical axis. And it's centered on the optical axis. This is two years before the application. Excuse me. I wanted to understand what you're saying, but I wanted to ask you one thing about this issue that came up in the cog with Mr. Lindley. In page 3659 of the joint appendix, volume 2, we have, I guess, the instruction that ASML wanted to have given. What was driving that? In other words, why was ASML seeking to have that additional instruction? Amplification? Yes. It's an excellent question. Here's it's setting a trial. They're attacking the MS2. Their expert takes the stand. And they have other bases of attack that are not relevant on appeal. So we're focused now on this axially centered definition of the court. And what their expert is telling the jury, is arguing to the jury, is that that construction of the court actually has additional limitations that don't appear there. The unconstruction. The reconstruction. And he's basically saying throw it out because the MS2 has a folded, catadioptric, expensive lens. So he is making a claim construction argument to the jury. And we say, well, wait a minute, Your Honor. There's only one claim construction. It's not three, one each for the parties and the courts. There's one. There's one you get. And because they've been making this argument to the jury that we're objecting to, we need to have a jury instruction that clarifies the court's claim construction is correct and that the lens can be folded or unfolded, catadioptric, reflective or refractive, it doesn't make any difference. Now the argument by opposing counsel in opposition is, huh, we don't need that. It is just a factual determination. They can have their witness argue the facts. We can have our witnesses argue the facts. They win the argument. The court doesn't clarify that there aren't these additional limitations that their expert is arguing to the jury. They win the argument that it's a factual determination. And assuming that they're also consistent on appeal, if it is a factual question, the only question before this court is one substantial basis. So then on argument to the jury by the attorneys, basically ASML argued, in essence, what's in this proposed instruction, saying that that crafted that to the evidence? Well, the principal argument is we have an actually centered lens where the image field is centered relative to the optical axis of the lens. That's the court's construction. And the principal argument goes to, for example, this chart, which is in the joint appendix 4607, or the second chart, which is an exhibit. I think it's at 3919 in the joint appendix. Other exhibits, John Shimali, he is the team leader. He comes to trial and he testifies. And he says, I organized this project. I knew it in terms of an engineering sense how the project was designed. And it had an actually centered lens. And in great detail, he describes that the image field is centered relative to the optical axis of the lens. Then when we get to rebutting the argument of their expert saying to ignore the MS2, we say, well, wait a minute. The MS2, which does have what they call a folded lens system and is catadioptric, is sufficient to anticipate because there are not those additional claim constructions. We were the ones following the court's claim construction. But if you hypothetically, if you had lost, if the jury had come back and said no anticipation, you would have been making an argument here, which would be not analogous to Mr. Mundy's argument. You would have been here making a claim construction argument. It would actually be the opposite, but it would be a claim construction argument. It would actually be more on point of the MOBA case than Ultratech's argument. I was just going to ask you about MOBA. So in the MOBA case, the party, the appellant, that prevailed on appeal, said, we like the court's claim construction. It's a method, and it has certain steps dealing with eggs, moving an egg to a holding station, moving it to a place where it's spaced apart, moving more eggs to a holding station. There's no further construction to say whether those steps have to be in a particular sequential order. Under those circumstances, they don't have to be. They could be in any order. So the appellant's consistent throughout in the claim construction that they want, the claim construction that they got. And the district court recognizes, after the jury verdict, that the only way the jury could have found in favor of the other party was to impose an additional requirement that the method required a particular sequence of steps. And under those circumstances, this court says, well, wait a minute. That's allowing the jury to do claim construction. We don't allow that. It is less of a waiver case, which is how Ultratech tries to portray it now, because the appellant was consistent with their claim construction position, unlike Ultratech on this appeal. It was a substantial evidence case. The Federal Circuit found that no reasonable jury, based on the evidence before the trial court, could have found for the other party under those circumstances. And they reversed on that basis. So in essence, this is a case where there was a stipulated claim construction. And a way to think about it is, if this is claim construction, no matter how you characterize it, as metaconstruction or the initial construction, and I think it truly is, because they're trying to add new limitations, the unfolded, the single, they plainly waive it. If you accept their characterization on appeal, that they're accepting the court's claim construction despite the backflip and the metaconstruction, then it is a matter of evidence and a factual dispute, in which case the substantial evidence rule applies, and in which case the judgment ought to be affirmed. Thank you very much. Thank you. Your Honor, as far as I can tell, everyone at every time in this case, except for the red brief, agreed that this was an issue of claim construction. We argued below, objecting to their testimony, that it was claim construction. Mr. Chu argued below, in a long colloquy with the judge, that this was claim construction. But at some point, you argued, no, no, no, it's an issue of fact, in response to Mr. Chu's claim that this was claim construction. Your Honor, there's a statement that said this is a factual question. But I think in context, what Mr. Bunceau was talking about was a determination that this was going to devolve into a battle of the experts, a factual battle. But even if that's true, even if that statement isn't prejudicial to you, you certainly, clearly, were not in there with Mr. Chu, saying, yeah, Your Honor, you better do a clean claim. Well, absolutely right, Your Honor. But it's not because we thought it wasn't claim construction. It's because we thought the claim construction was perfectly clear already, and that, as a matter of law, the AFB microscan couldn't anticipate. The judge thought it was claim construction. He said, you're asking for more claim construction. He knew exactly what Mr. Chu was asking for, a change of metaconstruction. Mr. Chu argues here that it's Ultratech who's changing their claim construction. We've been perfectly consistent throughout this case. We think the claim construction the parties agreed on is one that requires a single optical axis, that a folded catadioptric system does not meet that claim construction. Mr. Chu wanted a new claim construction, argued for it below, didn't get it, and then instead argued to the jury that you could twist the existing claim construction so that it meant something different than what, in fact, it does. Now, he tells you here in oral argument today that there's lots of evidence that catadioptric systems have an axially-centered lens. He can make that argument, I think, only by eliding the fact that the testimony he's referring to treats folded, multiple-axis systems as axially-centered. If you accept our claim construction argument, which is that the requirement is for a single optical axis, all of that testimony is irrelevant, because everyone agrees that the Microscan II didn't have only a single optical axis. It was, in fact, a folded system. Indeed, Van Pesky, one of the designers of Microscan II, testified at the trial that it had multiple optical axes. We think that's consistent with the Lin reference, with the 454 patent, both of which are contemporaneous documents that say that catadioptric systems have multiple optical axes. And we think if our claim construction is accepted, the case needs to be remanded at a minimum for a new trial on the obviousness issue. Thank you. Thank you very much.